IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOYCE ANN MCCALLISTER,

    Plaintiff,

v.                                             Civil Action No. 2:12-cv-01431

MICHAEL ASTRUE[1],
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDATION**

    This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits (DIB") and supplemental security income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11), Brief in Support of the Defendant's Decision (ECF No. 12) and Plaintiff's Response to Objections (ECF No. 13).

    Claimant, Joyce Ann McCallister, filed applications on August 18, 2010. In the applications, Claimant alleged disability beginning October 8, 2008. The claim was denied initially and upon reconsideration. Claimant filed a written request for hearing on August 1,

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Carolyn W. Colvin is automatically substituted as the defendant in this action.

1

2011.  A hearing was held on September 12, 2011.  In the Decision dated November 16, 2011, the Administrative Law Judge (ALJ) determined that Claimant was not entitled to social security income benefits (Tr. at 30).  The ALJ held the record open until Claimant could submit current evidence (Tr. at 63). On March 10, 2012, Representative's Brief was received and marked as Exhibit 21E of the record and Additional Medical Evidence was marked as Exhibit 27F (Tr. at 4). On December 22, 2011, Claimant requested a review of the hearing decision.  The Appeals Council notified Claimant on March 10, 2012, that her request for review was denied (Tr. at 1-5). Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).  Plaintiff's Brief in Support of Judgment on the Pleadings was filed on August 12, 2012 (ECF No. 11). Defendant's Brief in Support of the Defendant's Decision was filed on October 11, 2012 (ECF No. 12).  Plaintiff's Response to Objections was filed on October 24, 2012 (ECF No. 13).

Under 42 U.S.C. § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2012).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id*. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id*. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id*. §§ 404.1520(c), 416.920(c).  If a severe

impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id*. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date (Tr. at 20). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic cervical, thoracic and lumbosacral muscle strain, thoracic and lumbar disc disease with a history of lumbar disc herniation, asthma, status post hiatal hernia surgeries, status post incisional hernia repair, major depressive disorder and panic disorder. (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in in 20 C.F.R. 404 Subpart P, Appendix 1 (Tr. at 21). The ALJ then found that Claimant has a residual functional capacity (RFC) for sedentary work, reduced by nonexertional

limitations[2] (Tr. at 22). As a result, Claimant cannot return to her past relevant work (Tr. at 28). The ALJ concluded that Claimant could perform jobs such as order clerk, surveillance system monitor and patcher (Tr. at 29). On this basis, benefits were denied (Tr. at 30).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

---

[2] Claimant can never climb ladders, ropes and scaffolds or crawl. She can occasionally perform balancing, kneeling, stooping, crouching and climbing of ramps and stairs. She must avoid concentrated exposure to extreme cold and extreme heat, fumes, odors, dusts, gases, poor ventilation and hazards such as heights and machinery. Claimant cannot perform overhead reaching. Claimant is limited to understanding, remembering and carrying out simple instructions. She is limited to occasional interaction with the public (Tr. at 23)

Claimant's Background

      Claimant was born on August 1, 1963 (Tr. at 314). She received her GED in 1996.[3] Claimant's work history includes 4 or 5 years at a restaurant, 4 years at a hardware store and 3 years in janitorial work (Tr. at 314). She was last employed as a clerk at a hardware store in 2008 (Tr. at 416).

The Medical Record

      Claimant asserted her disability onset date as October 10, 2008. She stated that she stopped working "because of her condition" (Tr. at 181). Claimant filled out a Social Security Administration Function Report on May 17, 2009 (Tr. at 189-196). Claimant reported to waking up between 7:00a.m. to 8:00a.m. and taking the dogs out (Tr. at 189). Claimant also listed taking a shower or bath, cleaning, watching television and cooking as daily activities. (*Id*.) Claimant reported to feeding the dogs and taking them for walks (Tr. at 190). Claimant reported her house work and yard work depend on how her back feels and lists dusting and laundry as household chores she is able to do (Tr. at 191). She reported that she doesn't do yard work because of her allergies. On the May 17, 2009, Functional Report, Claimant asserted that she goes grocery shopping approximately 2 days a week and pays bills (Tr. at 192). Claimant listed her hobbies and interests as watching television and working puzzles (Tr. at 193). Claimant asserted that she "can't stand to be around people" and does not handle stress very well (Tr. at 195).

      On May 17, 2009, Claimant filled out a Personal Pain Questionnaire asserting pain in her lower back (Tr. at 197). Claimant reported that she has taken the prescription Lortab 4 times a day since 2006 and Aciphex 2 times a day since 2002 (Tr. at 198, 200). Claimant listed having

---

[3] General Education Development is a Certificate of high school equivalency.

pain in her lower back, right knee and hiatal hernia (Tr. at 198-199). Claimant reported that she worked as a cook/clerk at Tudor's Biscuit World in 2003, housekeeper at Holiday Inn Express in 2004 and supply clerk at Hagar Hardware Supply from 2004 to 2008 (Tr. at 202). In describing her job as a supply clerk, Claimant asserted that she waited on customers, ran a cash register and helped unload trucks (Tr. at 203). She reported to working 10 hour days, 6 days a week. Claimant reported to lifting 60 pounds frequently during a workday.

On July 6, 2009, a West Virginia Disability Determination Service Disability Determination Examination was performed by Alfredo C. Velasquez, M.D., on Claimant (Tr.at 314-318). Claimant's allegation was lower back pain (Tr. at 314). Claimant stood at 5 feet ½ an inch and weighed 183 pounds (Tr. at 315). Claimant's cervical area exam did not show any restriction or pain and showed free movement in all directions without pain. (*Id.*) Her flexion and extension was 80 degrees with slight pain in the lumbar area. Lateral flexion left and right was 25 degrees. Her straight leg raise test[4] was 90 degrees on both sides with slight pain in the lumbar area. Her lumbar area presented slight tenderness on bending (Tr. at 316). Dr. Valesquez's examination summary found that Claimant had a mild lumbosacral muscle pain without radiation. (*Id*.)

On August 17, 2009, James Egnor, M.D., conducted a Physical Residual Functional Capacity Assessment (RFC) of Claimant (Tr. at 335-342). Dr. Egnor found that Claimant could occasionally lift 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of 6 hours in an 8 hour workday, sit for a total of 6 hours in an 8 hour workday and was

---

[4] The straight leg raise is a test done during a physical examination to determine whether a patient with low back pain has an underlying herniated disc, often located at the fifth lumbar spinal nerve (L5). If the patient experiences sciatic pain when the straight leg is at an angle between 30 and 70 degrees, then the test is positive and a herniated disk is likely to be the cause of the pain. See, United States Library of Medicine/National Institutes of Health, http://www.ncbi.nlm.nih.gov (last visited August 23, 2013).

unlimited in pushing and pulling (Tr. at 336).  Dr. Egnor reported that Claimant could occasionally climb ladders, ramps, stairs, ropes and scaffolds, balance, stoop, kneel, crouch and crawl (Tr. at 337).  Claimant did not have any manipulative, visual or communicative limitations.  Dr. Egnor found that Claimant's complaints were not credible and the RFC was reduced to light work exertion (Tr. at 340). Dr. Egnor diagnosed Claimant with lumbrosacral muscle strain (Tr. at 342).

Notes dated May 10, 2010, from treating physician Steven R. Matulis, M.D., report that Claimant underwent a colonoscopy on April 22, 2010 (Tr. at 344).  The colonoscopy was normal and biopsies obtained from the left colon revealed normal colonic mucosa.  Claimant stated she has chronic diarrhea.  Dr. Matulis prescribed Colestid for Claimant's diarrhea.

On October 16, 2010, Claimant filled out another Social Security Administration Function Report (Tr. at 245-252).  Claimant asserted to having diarrhea "all the time."  She stated that her back hurts "all the time, even when I sweep, mop and sweeper" (Tr. at 245).  She listed her daily activities to include taking the dogs out, making breakfast, washing dishes, sweeping the floors, watching television and feeding the dogs (Tr. at 246).  Claimant listed household chores as cleaning and doing laundry (Tr. at 247).  On the October 16, 2010, Function Report, Claimant asserted that she goes grocery shopping every week for approximately 1 to 2 hours and that she is able to pay bills and count change (Tr. at 248).  She listed fishing, watching television and walking dogs as her hobbies and interest.  She reported to performing her hobbies daily, except she doesn't go fishing sometimes due to back pain and diarrhea (Tr. at 249).  Claimant reported to going to church every Sunday.  (*Id*.)  She stated that she cannot concentrate for long periods of time and does not handle stress well.  She reported to taking the prescription Prevalite and having diarrhea as a side effect to the medication (Tr. at 252).

7

On October 16, 2010, Claimant filled out a Personal Pain Questionnaire asserting pain in her lower back and reporting problems with diarrhea allergies/asthma (Tr. at 241-242). Claimant reports that she takes a prescription for Lortab 4 times a day and Prevalite 2 times a day. Other medications prescribed to Claimant include Albuterol, Symbicort and Singulair (Tr. at 243).

On January 13, 2011, a West Virginia Disability Determination Service Adult Mental Status Examination was performed by Kara Gettman-Hughes, M.A. (Tr. at 415-421). As part of the evaluation process, Claimant's clinical interview, mental status examination and medical records were reviewed. Claimant asserted that she is applying for disability because of chronic back pain. Claimant also asserted that she has had three slipped discs and a herniated disc in her back. She noted a burning sensation in her legs and numbness in her right foot (Tr. at 416). Claimant asserted that she had acid reflux and a sliding hiatal hernia. She stated that she was experiencing nausea and that she was depressed. Claimant listed her medications include Lortab, Centrum, Singulair, Detrol, Albuterol, Symbicort, Elavil, Nexium, Loraepam and Prevalite (Tr. at 417). Claimant reported that she consumes 3 to 4 sodas per day. It was noted that Claimant's affect was slightly exaggerated (Tr. at 418). The evaluation found Claimant's social functioning to be mildly impaired. Claimant's immediate memory was intact, her recent memory was severely impaired and her remote memory was fair. Claimant's concentration and persistence were mildly impaired while her pace was rapid. (*Id*.)

On February 1, 2011, John Todd, Ph.D., conducted a psychiatric review of Claimant. He stated that Claimant does not meet the criteria for mental disorders as found in 20 C.F.R. 404 Subpart P, Appendix 1. Listings 12.02, 12.04, 12.06-12.08 and 12.10 (Tr. at 433). Dr. Todd found that Claimant has no limitation in activities of daily living and episodes of decompensation. He found Claimant to have a mild degree of limitation in maintaining social

8

functioning, concentration, persistence and pace (Tr. at 433). Dr. Todd found that evidence did not establish the presence of criteria in organic, affective and anxiety-related mental listings (Tr. at 434). He found that Claimant exhibits the mental capacity to perform 2 to 3 work activities of a repetitive nature with a few changes required (Tr. at 440).

On March 2, 2011, Narendra Parikshak, M.D., conducted a Physical Residual Functional Capacity Assessment of Claimant (Tr. at 452-459). Dr. Parikshak reported Claimant's exertional limitations consisted of occasionally lifting/carrying 20 pounds and frequently lifting/carrying 10 pounds. Claimant could stand and/or walk for 6 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday and was unlimited in pushing and/or pulling (Tr. at 453). Dr. Parikshak stated that Claimant's symptoms were partially credible (Tr. at 457). Dr. Parikshak found that Claimant experiences mild limitations in her range of motion of the lumbar spine and right shoulder. (*Id.*)

On June 6, 2011, H. Hoback Clark, M.D., conducted a psychiatric review of Claimant. He stated that Claimant does not meet the criteria for mental disorders as found in 20 C.F.R. 404 Subpart P, Appendix 1. Listings 12.02, 12.04, 12.06-12.08 and 12.10 (Tr. at 746). Dr. Clark found that Claimant has no episodes of decompensation. He found Claimant to have a mild degree of limitation in activities of daily living and maintaining social functioning. Claimant was moderately limited in concentration, persistence and pace (Tr. at 746). Dr. Clark found that evidence did not establish the presence of criteria in organic, affective and anxiety-related mental listings (Tr. at 747). He found that despite some limits in concentration, Claimant would be able to understand, remember and follow simple and more complex instruction (Tr. at 753). Dr. Clark found that Claimant would be able to adapt to routine changes and could perform work activities on a sustained basis. (*Id.*)

9

On June 8, 2011, Rogelio Lim, M.D., conducted a Physical Residual Functional Capacity Assessment of Claimant (Tr. at 466-473). Dr. Lim reported Claimant's exertional limitations consisted of occasionally lifting/carrying 20 pounds and frequently lifting/carrying 10 pounds. Claimant could stand and/or walk for 6 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday and was unlimited in pushing and/or pulling (Tr. at 467). Dr. Lim found that Claimant's allegations were not fully credible (Tr. at 473). He reported that a preponderance of the evidence supported Claimant's ability to perform light work. (*Id*.) Dr. Lim stated that Claimant presented multiple allegations that were out of proportion to objective findings and that chronic diarrhea is not disabling.

On December 12, 2011, Claimant's treating physician, Dr. Matulis, reported in office visit notes that Claimant is currently taking Lorazepam and has "fair control of nausea with this" (Tr. at 790). Claimant tried Colestid and Questran for her diarrhea with minimal improvement. On December 14, 2011, an x-ray with contrast was conducted (Tr. at 793). Findings included no evidence of bowel obstruction, no inflammatory changes and that the small bowel mucosal fold pattern was normal. On December 20, 2011, Dr. Matulis performed an upper GI endoscopy (Tr. at 794). Dr. Matulis was unable to report any findings because Claimant's "stomach was completely full." (*Id*.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ's findings that she could perform sedentary work and perform sustained work activities are not based on substantial evidence. Claimant argues that the Vocational Expert's testimony was inconsistent with the Dictionary of Occupational Titles (DOT). The Commissioner asserts that physician assessments supported the ALJ's finding that

Claimant could at least perform sedentary work. The Commissioner argues that substantial evidence supports the exertional limitations presented by the ALJ to the Vocational Expert (VE) and that any conflicts between the Vocational Expert's testimony and the DOT were addressed and accounted for in the jobs Claimant was found capable of performing.

Disorders of the Spine

The ALJ evaluated Claimant's chronic cervical, thoracic and lumbosacral muscle strain and thoracic and lumbar disk disease with a history of lumbar disc herniation under the Code of Federal Regulations Subpart P, Appendix 1 Listing 1.04 Disorders of the Spine (Tr. at 21). Listing 1.04 requires a compromise of a nerve root or of the spinal cord with one of the following:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test;
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysethesia, resulting in the need for changes in position or posture more than once every 2 ours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

An MRI of Claimant's spine without contrast conducted on September 8, 2007, stated Claimant had been suffering from mid back pain for one month (Tr. at 756). MRI findings

reported "extensive degenerative changes at L5 and S1 with Modic endplate changes are redemonstrated as was a right paracentral disc herniation." (*Id.*) Findings stated that "tiny left paracentral herniation which is again noted to be likely clinically insignificant at T7-T8 is redemonstrated. There is no abnormal signal in the cord." (*Id.*) This MRI was taken prior to Claimant's alleged onset date of October 8, 2008.

Dr. Velasquez's Disability Determination Examination on July 6, 2009, reported that Claimant's "cervical area exam did not show any restriction or any pain and free movement in all directions without any pain" (Tr. at 315). Dr. Velasquez noted that Claimant's lumbar area presented a slight tenderness on bending. He found that Claimant had a mild lumbosacral muscle pain without any radiation. The ALJ noted that Dr. Velasquez's objective findings did not support the severity of pain or limitations alleged by Claimant (Tr. at 24). The ALJ held that Claimant did not present evidence of root compression, spinal arachnoiditis or lumbar spine stenosis resulting in pseudoclaudication as required in Listing of Impairments 1.04. (*Id.*)

Evaluating Mental Impairments

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments. 20 C.F.R. § 416.920a (a) (2012); 20 C.F.R. § 404.1520a (a) (2012). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.* First, symptoms, signs and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2012). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2012). Third, the ALJ then must rate the

degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2006). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2012). The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2012). A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2012). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2012). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2012). The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2012).

The ALJ held that Claimant's mental impairments, considered singly and in combination, do not meet or medically equal Listings 12.02 requirements (Tr. at 21). *See*, 20 C.F.R. 404 Subpart P, Appendix 1. Listing 12.02 describes organic mental disorders as "Psychological or behavioral abnormalities associated with a dysfunction of the brain." To demonstrate disability

Claimant must satisfy requirements in paragraphs (A) and (B) or illustrate the requirements in paragraph (C) are satisfied.

The ALJ found that evidence did not satisfy Listing 12.02's requirements in paragraphs (B) and (C). Paragraph (A) requires Claimant to demonstrate a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:

1. Disorientation to time and place; or
2. Memory impairment, either short-term, intermediate, or long term; or
3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
4. Change in personality; or
5. Disturbances in mood; or
6. Emotional liability and impairment in impulse control; or
7. Loss of measured intellectual ability of at least 15 IQ points from premorbid levels.

Paragraph (B) requires Claimant's mental impairment result in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration.

The ALJ concluded that Claimant did not satisfy the requirements of paragraph (B). The ALJ relied on Claimant's Functional Reports, testimony, Dr. Clark's psychiatric review and Dr. Todd's psychiatric review. The ALJ found Claimant's restriction of activities of daily living to be moderate. He found Claimant's difficulties in maintaining social functioning and difficulties maintaining concentration, persistence and pace to be moderate. Lastly, the ALJ found Claimant to have no episodes of decompensation (Tr. at 22).

The ALJ found insufficient evidence for Claimant to establish the criteria for paragraph (C). Paragraph (C) requires "medically documented history of a chronic organic mental disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic

work activities, with symptoms or signs currently attenuated by medication or physo-social support and one of the following:"

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The Claimant had no episodes of decompensation. Claimant listed her daily activities to include taking the dogs out, making breakfast, washing dishes, sweeping the floor, feeding the dogs, doing laundry and watching television. Claimant reported grocery shopping and attending church every Sunday.

Vocational Expert Testimony

At the hearing, the ALJ asked Vocational Expert Nancy Shapiro if a hypothetical individual had the same age, education and work experience as Claimant with the same non-exertional limitations stated before, could perform jobs in the national and regional economy. The ALJ's limitations specifically included no overhead reaching and only occasional interaction with the public (Tr. at 60-61). Vocational Expert Shapiro testified that the hypothetical individual could perform sedentary jobs such as order clerk, surveillance system monitor and patcher (Tr. at 61).

Claimant argues that "the ALJ failed to question the VE as to whether this testimony was consistent with the DOT" (ECF No. 11, pg. 8). The ALJ asked VE Shapiro, "Is your testimony consistent with the Dictionary of Occupational Titles?" To which VE Shapiro responded yes (Tr. at 61). The ALJ asked VE Shapiro if the hypothetical individual was also limited to needing

15

a sit/stand option, sitting for 25 minutes at a time and standing for 20 minutes at a time, could such a person perform the above stated occupations. VE Shapiro replied yes. State agency physicians, Dr. Egnor and Dr. Lim, each opined that Claimant could perform the occasional or frequent lifting requirements of light work. The ALJ gave Claimant the benefit of the doubt and limited her lifting and carrying requirements to sedentary work (Tr. at 27-29). VE Shapiro testified "in my opinion, although the DOT does not recognize stand option, these jobs would allow for it" (*Id.*) Pursuant to SSR 00-4[5], the Vocational Expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Credibility Determination

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The ALJ held Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment (Tr. at 23-24, 27). Claimant's psychological allegations, as well as her physical pain, were not credible.

It is well-settled that a claimant's allegations alone will not establish that she is disabled. *See*, 20 C.F.R. § 404.1529 and *Craig v. Chater*, 76 F.3d 585, 594-595 (4th Cir. 1996). While the ALJ must seriously consider a claimant's subjective complaints, it is within the AJ's discretion to weigh such complaints against the evidence and to reject them. *See*, 20 C.F.R. § 404.1529 and *Craig*, 76 F.3d at 595. As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the

---

[5] Social Security Ruling 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

The ALJ held that after careful consideration of the evidence, Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessments (Tr. at 23). Claimant reported to taking the dogs for a walk, making breakfast, washing dishes, sweeping the floors, feeding the dogs, washing laundry and watching television. Claimant reported she goes grocery shopping and attends church every Sunday.

Claimant argues that Dr. Velasquez's medical examination on July 6, 2009, supports her assertion that she cannot perform sedentary work (ECF No. 11). Dr. Lim and Dr. Egnor's RFCs both found Claimant to have no limitations in pushing or pulling. The ALJ found that objective findings do not support the limitations alleged by Claimant and reveal she is not fully credible regarding the severity of her complaints (Tr. at 23). Dr. Velasquez's examination does not support the severity of pain or limitations alleged by Claimant (Tr. at 24). Furthermore, the reaching involved in sedentary work was limited in the ALJ's hypothetical question to VE Shapiro (Tr. at 60).

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Judge John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: September 3, 2013

Dwane L. Tinsley
United States Magistrate Judge